# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1628

_____

Wells Dairy, Inc.,

        Appellee,

v.

Food Movers International, Inc.,

        Appellant.

\* Appeal from the United States
\* District Court for the
\* Northern District of Iowa.

_____

Submitted: February 11, 2010
Filed: June 2, 2010

_____

Before WOLLMAN, BYE, and MELLOY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Wells Dairy, Inc., filed suit against Food Movers International, Inc. (FMI), in Iowa state court, alleging that FMI had failed to pay for product it had ordered and received. FMI removed the action to federal district court[1] and filed a motion to dismiss for lack of personal jurisdiction, which was denied. Thereafter, FMI admitted the allegations in the complaint and judgment was entered against it. FMI appeals, contending that because it did not have the necessary minimum contacts with Iowa,

_____

[1] The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

the district court's exercise of personal jurisdiction over it violated traditional notions of fair play and substantial justice. We affirm.

## I.

Wells Dairy is an Iowa corporation that manufactures, distributes, and sells dairy and frozen novelty products. Its principal place of business is Le Mars, Iowa. FMI is a California corporation that purchases bulk food products from manufacturers and resells the products to retailers and other distributors. Its principal place of business is Benicia, California.

In May 2005, Thomas LaMonica, vice president of FMI, contacted Susan Erickson, western regional sales manager for Wells Dairy, and requested that FMI be allowed to purchase product on credit. Erickson, whose office is located in Alta Loma, California, explained that decisions regarding credit approval and pricing and quantity terms were made in LeMars. FMI submitted its credit application to Erickson, who forwarded it to David Bruggeman, the director of the credit and receivables department. Bruggeman reviewed the credit application, verified the references, and researched FMI from his LeMars office. After the application was approved, FMI began utilizing its credit.

From June 2005 to July 2007, FMI faxed more than100 purchase orders to Wells Dairy, ordering more than $6.5 million worth of product. Deb Gran, a food service sales account coordinator, received and processed the purchase orders in LeMars. Wells Dairy offered to ship the goods to California, but FMI requested that goods be made available for "customer pick up" from the manufacturing facility in LeMars. FMI occasionally cancelled its orders, and when it did, Gran spoke with Thomas LaMonica. Gran also worked with FMI to resolve shipping issues, speaking with Thomas LaMonica or Anthony LaMonica, FMI's president, and not with FMI's

customers, who were taking delivery of the Wells Dairy product from the LeMars plant. FMI was invoiced from and remitted payments to Wells Dairy in LeMars.

## II.

We review *de novo* the denial of a motion to dismiss for lack of personal jurisdiction. Miller v. Nippon Carbon Co., 528 F.3d 1087, 1090 (8th Cir. 2008). To allege personal jurisdiction, "a plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state." Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004) (quoting Block Indus. v. DHJ Indus., 495 F.2d 256, 259 (8th Cir. 1974)) (internal quotations and alterations omitted). If the defendant controverts or denies jurisdiction, the plaintiff bears the burden of proving facts supporting personal jurisdiction. Id. The plaintiff's showing "must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." Id. (quoting Block Indus., 495 F.2d at 260).

To conclude that the district court properly asserted jurisdiction over a nonresident defendant, we must determine that personal jurisdiction exists under the forum state's long-arm statute and that the exercise of personal jurisdiction is consistent with due process. See id. at 1073. Because Iowa's long-arm statute "expands Iowa's jurisdictional reach to the widest due process parameters allowed by the United States Constitution," Hammond v. Fla. Asset Fin. Corp., 695 N.W. 2d 1, 5 (Iowa 2005), our inquiry is limited to whether the exercise of personal jurisdiction comports with due process.

Due process requires that there be minimum contacts between the nonresident defendant and the forum state such that the assertion of personal jurisdiction is consistent with traditional notions of fair play and substantial justice. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980); Int'l Shoe Co. v.

Washington, 326 U.S. 310, 316 (1945). "Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that [it] should reasonably anticipate being haled into court there." Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir. 1994) (quoting Soo Line R.R. v. Hawker Siddeley Can., Inc., 950 F.2d 526, 528 (8th Cir. 1991)). To support a finding of reasonable anticipation, "there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." Id. at 818-19 (quoting Soo Line R.R., 950 F.2d at 529).

We have established a five-part test for measuring a defendant's contacts with the forum state: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." Id. at 819 (citing Land-O-Nod Co. v. Basset Furniture Indus., 708 F.2d 1338, 1340 (8th Cir. 1983)). Personal jurisdiction may be established by general jurisdiction or specific jurisdiction, and the third factor—relation of the cause of action to the contacts—distinguishes between the two. Id. "[G]eneral jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose," while specific jurisdiction requires that the cause of action arise from or relate to a defendant's actions within the forum state. Id. (internal quotation, citation, and alterations omitted).

A.

The record does not establish that FMI is subject to general jurisdiction in the state of Iowa. Although the full extent of its contacts with Iowa is unknown, Anthony LaMonica attested to a lack of the continuous and systematic contacts required to establish general jurisdiction: the company is not licensed to do business in Iowa, it

-4-

does not maintain employees or a registered agent there, it does not own or lease property in Iowa, and its employees have not traveled to Iowa to conduct FMI's business.  Compare Dever, 380 F.3d at 1075 (holding that Sherwin Williams had sufficient contacts with the forum state to establish general jurisdiction because the company "conducts continuous business in Arkansas; it employs workers, owns and leases property, and has designated an agent for service of process in the state") with Bell Paper Box, 22 F.3d at 819 (holding that U.S. Kids had insufficient contacts with the forum state to establish general jurisdiction because the "only contacts between U.S. Kids and South Dakota alleged in this case are related to the dispute that resulted in this suit being brought").  Wells Dairy has failed to prove general jurisdiction, but it has alleged and proved jurisdictional facts related to FMI's ongoing business relationship with Wells Dairy and the events giving rise to this lawsuit.

B.

FMI contends that its contacts with Iowa were insufficient to support the district court's exercise of specific jurisdiction.  We conclude that the district court properly exercised specific jurisdiction.

Certain meaningful events in the parties' business relationship occurred in Iowa.  FMI sought credit approval from Wells Dairy, submitting its application to Wells Dairy's California representative, who forwarded it to the Iowa office.  The application was processed and approved in Iowa, allowing the company to charge approximately $6.5 million to its Wells Dairy account.  Moreover, FMI received and transferred Wells Dairy product in Iowa, under the "customer pick up" term of delivery it dictated.  FMI allowed its customers to take possession of the products in Iowa, effectively accepting delivery and redelivering the product to its customers.  Each of its transactions with Wells Dairy, including the eleven at issue in this lawsuit, thus involved the submission of a purchase order, the accessing of credit, and "customer pick up" in Iowa.  FMI also remitted payment to Wells Dairy in Iowa for

its purchases. The subject matter of this dispute—that FMI failed to pay for product it purchased on credit—thus occurred within Iowa.

As did the district court, we recognize the countervailing considerations that FMI points to in support of its argument. FMI was not physically present in Iowa, its initial contacts with Wells Dairy took place in California, and its communications with the Wells Dairy Iowa office occurred only via telephone, facsimile, and mail. See Mountaire Feeds, Inc. v. Agro Impex, S.A., 677 F.2d 651, 656 (8th Cir. 1982) ("[T]he use of arteries of interstate mail, telephone, railway and banking facilities is insufficient, standing alone, to satisfy due process." (quoting Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co., 558 F.2d 450, 453 (8th Cir. 1977))). These facts, however, are not dispositive of whether FMI's contacts with Iowa were sufficient to support personal jurisdiction.

FMI contends that Scullin Steel Co. v. National Railway Utilization Corp., 676 F.2d 309 (8th Cir. 1982), mandates a ruling in its favor. In Scullin Steel, we held that there were insufficient minimum contacts between the nonresident defendant, National Railway, and the forum state to allow the assertion of personal jurisdiction. Id. at 313. Like FMI, the defendant in Scullin Steel had no office, agent, personnel, or real property within the forum state. Like Wells Dairy, Scullin Steel manufactured the product, received payment, and delivered the product in the forum state. The delivery terms of the two contracts were also similar, with the Scullin Steel contract requiring delivery "F.O.B. Seller's Plant."[2] Important differences, however, distinguish Scullin Steel from the facts in this case. In Scullin Steel, the plaintiff solicited National

_____

[2]In Scullin Steel, we stated that the delivery term in a contract could not create sufficient contacts to uphold jurisdiction. 676 F.2d at 313. Standing alone, this remains true, but we have since considered delivery terms as relevant to the finding of personal jurisdiction. See Bell Paper Box, 22 F.3d at 820 n.2 (noting that delivery terms alone do not create sufficient contacts, but that such terms are relevant in a personal jurisdiction analysis).

Railway's business and traveled to National Railway's headquarters to negotiate its contract. FMI, on the other hand, solicited the plaintiff's business, knowing that Wells Dairy was an Iowa corporation. FMI also sought and applied for credit from the Iowa company, which was a precursor to their ongoing business relationship. Additionally, FMI received Wells Dairy product in Iowa and simultaneously transferred possession and title to its customers. Based on these differences, we conclude that our precedent does not require reversal.[3]

We conclude that, taken together, FMI's contacts with Iowa amounted to the minimum contacts required by due process. FMI purposefully availed itself of the privilege of conducting activities within Iowa when it solicited an Iowa company for business, sought to purchase the Iowa company's products on credit provided by the Iowa company, negotiated and fulfilled the "customer pick up" delivery term, and entered into more than 100 transactions over the course of two years, during which it relied on the Iowa company for customer support. Moreover, Iowa, as the forum state, has an interest in providing a forum for its company. Defending a case in Iowa may be inconvenient for FMI, but its contacts with Iowa were not so random, attenuated, or fortuitous that it could not reasonably anticipate being hauled into Iowa court. Accordingly, the district court's exercise of jurisdiction over FMI is consistent with traditional notions of fair play and substantial justice, and thus we affirm its order denying the motion to dismiss and the judgment entered thereon.

—————————————————

[3]Although the determination that personal jurisdiction exists turns on the facts of each case, we note that we are not the first circuit to hold that FMI's business model subjected it to jurisdiction in a foreign state. See Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249 (11th Cir. 2010) (affirming a Georgia district court's exercise of personal jurisdiction over FMI).