# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1723
_____

Dairy Farmers of America, Inc.

*Plaintiff - Appellant*

v.

Bassett & Walker International, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - St. Joseph

_____

Submitted: September 20, 2012
Filed: December 26, 2012

_____

Before MELLOY and BENTON, Circuit Judges, and BAKER, District Judge.[1]

_____

BENTON, Circuit Judge.

Dairy Farmers of America, Inc. sued Bassett & Walker International, Inc. for breach of contract. Bassett moved to dismiss for lack of personal jurisdiction. The

_____

[1]The Honorable Kristine G. Baker, United States District Judge for the Eastern District of Arkansas, sitting by designation.

district court[2] dismissed.  DFA appeals.  Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

DFA, a Kansas cooperative, has its principal place of business in Kansas City, Missouri.  Bassett, an international commodities broker and a Canadian corporation, has its principal place of business in Toronto, Ontario.  Bassett is not qualified to do business in Missouri; has no agent for service of process, offices, property, bank accounts, telephone listings, or employees here; and does not advertise or promote its business here.  According to the record, no Bassett employee has ever entered Missouri.[3]

DFA and Bassett began their relationship in 2006.  Between July 2009 and February 2011, Bassett purchased more than 3.5 million pounds of dairy products from DFA in about 80 transactions totaling $5 million.  The parties did not have a long-term contract, agreeing to each transaction individually by phone.  Alejandro Diaz represented Bassett from Toronto.  George Butterfield represented DFA while traveling and from his home office in Michigan.  He did receive approval for each transaction from DFA's Missouri headquarters.  Butterfield spent three or four  days each month in Missouri.  Bassett communicated by phone and email with DFA's Missouri headquarters about delivery and billing.

---

[2]The Honorable Fernando J. Gaitan, Jr., Chief Judge, United States District Court for the Western District of Missouri.

[3]According to DFA's complaint, Bassett conducted meetings with DFA in Missouri.  Bassett disputed this allegation by affidavit; DFA failed to respond with evidence.  "The plaintiff's showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir.) (internal quotation marks omitted), *cert. denied*, 131 S. Ct. 472 (2010).

Bassett received a $50,000 line of credit from DFA in 2009. Bassett twice sought increases in the line of credit: first to $250,000, and then to $400,000. Bassett sent these requests by email to a DFA employee who processed them in Missouri.

In March 2011, Bassett used the line of credit to buy 220,000 pounds of non-fat dry milk. Bassett sent email confirmation of the agreement to DFA headquarters in Missouri. The agreement called for shipment of the product from Colorado to Mexico; DFA manufactured no products in Missouri. The agreement also called for Bassett to remit payment to Illinois. DFA sued, claiming Bassett failed to pay. The district court dismissed the suit for lack of personal jurisdiction.

II.

This court reviews de novo the dismissal for lack of personal jurisdiction. ***Viasystems, Inc. v. EBM-Pabst St. Georgen GmbH & Co., KG***, 646 F.3d 589, 592 (8th Cir. 2011). "To allege personal jurisdiction, 'a plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state.'" ***Wells Dairy, Inc. v. Food Movers Int'l, Inc.***, 607 F.3d 515, 518 (8th Cir.) (quoting ***Dever v. Hentzen Coatings, Inc.***, 380 F.3d 1070, 1072 (8th Cir. 2004)), *cert. denied*, 131 S. Ct. 472 (2010). "If the defendant controverts or denies jurisdiction, the plaintiff bears the burden of proving facts supporting personal jurisdiction." ***Id.*** Its "showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." ***Id.*** (internal quotation marks omitted).

"Personal jurisdiction can be specific or general." ***Viasystems***, 646 F.3d at 593. DFA agrees that Bassett is not subject to general jurisdiction in Missouri. "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state . . . ." ***Miller v. Nippon Carbon Co., Ltd.***, 528 F.3d 1087, 1091 (8th Cir. 2008) (internal quotation marks omitted). "Specific

personal jurisdiction can be exercised by a federal court in a diversity suit only if authorized by the forum state's long-arm statute and permitted by the Due Process Clause of the Fourteenth Amendment." *Viasystems*, 646 F.3d at 593.

## A.

Missouri's long-arm statute authorizes jurisdiction over any person or firm as to any cause of action arising from, among other things, that person or firm's "transaction of any business within this state" or "making of any contract within this state." **Mo. Rev. Stat. § 506.500.1(1), (2)**.

DFA contends that the district court should not have considered whether Missouri's long-arm statute limits jurisdiction. According to DFA, "Missouri courts take jurisdiction to the extent allowed by the due process clause."[4] DFA begins and ends its inquiry with due process.

DFA misses the mark. While the long-arm statute extends jurisdiction to the limits of the Due Process Clause, it does so only for acts within its enumerated categories. The Missouri Supreme Court has held that the legislature intended the long-arm statute "to provide for jurisdiction, within the specific categories enumerated in the statutes, to the full extent permitted by the due process clause of the Fourteenth Amendment." *State ex rel. Metal Serv. Ctr. of Ga., Inc. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. banc 1984); *see* **28 U.S.C. § 1652** (directing this court to follow the

---

[4]Contrary to DFA's assertion, Bassett did, in the district court, attack the application of the long-arm statute alone. Assuming that the long-arm-statute inquiry and the due-process inquiry were the same, Bassett contested personal jurisdiction under both. The district court corrected both parties' error of law. As appellee, Bassett may defend the district court's judgment on any ground supported in the record. *See Mass. Mut. Life Ins. Co. v. Ludwig*, 426 U.S. 479, 480-81 (1976) (per curiam).

Missouri Supreme Court's interpretation of Missouri law).  True, courts have often treated the statutory and constitutional inquiries together.  *See, e.g.*, *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011); *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (stating that Missouri's long-arm statute "confers jurisdiction to the extent allowed by the Due Process Clause"); *Porter v. Berall*, 293 F.3d 1073, 1075 (8th Cir. 2002); *Conway v. Royalite Plastics, Ltd.*, 12 S.W.3d 314, 318-19 (Mo. banc 2000).  The inquiries, however, are separate.  *See Bryant v. Smith Interior Design Grp., Inc.*, 310 S.W.3d 227, 231-32 (Mo. banc 2010) (analyzing the statutory and constitutional questions separately); *Chromalloy Am. Corp. v. Elyria Foundry Co.*, 955 S.W.2d 1, 4 (Mo. banc 1997) ("In order for a non-resident defendant to subject itself to the long-arm jurisdiction of this state, two elements must be present. First, the suit must arise out of the activities enumerated in the long arm statute; second, the defendant must have sufficient minimum contacts with Missouri to satisfy due process requirements." (internal citation omitted)); *Bennett v. Rapid Am. Corp*, 816 S.W.2d 677, 678 (Mo. banc 1991); *State ex rel. Bank of Gering v. Schoenlaub*, 540 S.W.2d 31, 33-34 (Mo. banc 1976); *see also Viasystems*, 646 F.3d at 593 n.2 (noting that the Missouri Supreme Court treats the questions separately); *Noble v. Shawnee Gun Shop, Inc.*, 316 S.W.3d 364, 370 (Mo. App. 2010) (finding that to interpret the statute to confer jurisdiction in all cases that the constitution would permit "would effectively ignore the language of the long-arm statute").  This court will address the inquiries separately.

The district court found that Bassett is not subject to jurisdiction under Section 506.500.1(2) because it made no contract in Missouri.  DFA does not dispute that finding on appeal.  Instead, DFA contends that Bassett is subject to jurisdiction under Section 506.500.1(1) because it transacted business within Missouri.

Missouri courts construe "transaction of any business" broadly.  *Gaertner*, 677 S.W.2d at 327.  A person or firm transacts business by visiting Missouri or sending its product or advertising here.  *See Chromalloy*, 955 S.W.2d at 4 (finding that the

foreign actor transacted business by "travel[ing] to Missouri intending to contact a Missouri corporation and propose the purchase of one of its assets"); *Gaertner*, 677 S.W.2d at 327-28 (finding that the foreign actor "transacted business in Missouri by shipping materials into this state . . . and retaking them after the work had been done"); *State ex rel. Newport v. Wiesman*, 627 S.W.2d 874, 877 (Mo. banc 1982) (finding that the foreign actor transacted business by establishing two franchised dealers in Missouri); *Mead v. Conn*, 845 S.W.2d 109, 112 (Mo. App. 1993) ("Dr. Henderson did transact business in Missouri by sending the EKG test results to Missouri for analysis under a business relationship where he paid for said services and stood to profit from the same."); *Boatman's First Nat'l Bank of Kansas City v. Bogina Petroleum Eng'rs*, 794 S.W.2d 703, 704 (Mo. App. 1990) (holding that a single visit by the foreign actor to Missouri was the transaction of business); *see also Precision Const. Co. v. J.A. Slattery Co.*, 765 F.2d 114, 115-16 (8th Cir. 1985) (finding jurisdiction under the Missouri statute where the foreign actor solicited orders from the forum, maintained offices and employees in the forum, and shipped product to the forum); *Simpson v. Dycon Int'l, Inc.*, 618 S.W.2d 455, 457 (Mo. App. 1981) (finding jurisdiction where the foreign actor sent advertising into Missouri and sold equipment to a business in Missouri pursuant to a distributorship agreement); *cf. Schoenlaub*, 540 S.W.2d at 33-34 (finding that a foreign bank did not transact business in Missouri when it "had no contacts with Missouri people or corporations except in the conduct of normal banking operations," including paying drafts drawn on accounts of its customers received from Missouri banks).

On the other hand, the use of mail or telephone communications to Missouri is not by itself the transaction of business. *Johnson Heater Corp. v. Deppe*, 86 S.W.3d 114, 120 (Mo. App. 2002); *Capitol Indem. Corp v. Citizens Nat'l Bank of Fort Scott, N.A.*, 8 S.W.3d 893, 904 (Mo. App. 2000); *see Scullin Steel Co. v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309, 312 (8th Cir. 1982).

Bassett did not transact business within Missouri. Bassett sent no product here and ordered none from Missouri. It did not advertise here. No Bassett employee ever entered Missouri. Bassett's communications with DFA's Missouri headquarters by phone, email, and fax alone do not amount to the transaction of business. Bassett did not transact business in Missouri, and therefore is not within the reach of Missouri's long-arm statute.

## B.

Even if Bassett had transacted business in Missouri, the district court could not constitutionally exercise jurisdiction over Bassett. "The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). A federal court sitting in diversity may exercise jurisdiction over a nonresident defendant that has such minimum contacts with the forum "that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The exercise of jurisdiction satisfies due process when the defendant's contacts with the forum are such that it "should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297. In a contract case, this court evaluates "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine "whether the defendant purposefully established minimum contacts within the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985).

Five factors determine whether sufficient contacts exist to support the exercise of personal jurisdiction: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." *K-V Pharm.*, 648 F.3d at 592. The first three factors are primary, but all five and the totality of the circumstances determine whether personal jurisdiction exists. *Id.* at 592-93.

Two cases, *Scullin Steel* and *Wells Dairy*, guide the analysis here. In *Scullin Steel*, an officer traveled out of Missouri to negotiate a contract with the buyer, the National Railway Utilization Corporation (NRUC). *Scullin Steel*, 676 F.2d at 310. The original contract called for delivery of the product over a two-year period (later extended for two more years). *Id.* Scullin Steel sued NRUC in district court in Missouri. *Id.* This court held that due process prevented jurisdiction over NRUC because it only made payment to Missouri for a product manufactured in Missouri and delivered to Missouri. *Id.* at 313-14.

In *Wells Dairy*, Food Movers International (FMI) bought product from Wells Dairy. *Wells Dairy*, 607 F.3d at 517. Wells Dairy sued FMI on 11 invoices in Iowa. *Id.* at 517, 519. This court held that FMI had sufficient contacts with the forum state that personal jurisdiction did not violate due process. *Id.* at 520. Like NRUC, FMI's contract called for payment to the forum for product manufactured in the forum and delivered to the forum. *Id.* This court held that "[i]mportant differences, however, distinguish *Scullin Steel* from the facts in this case." *Id.* In *Wells Dairy* the nonresident defendant, FMI, solicited the business, "knowing that Wells Dairy was an Iowa corporation." *Id.* "FMI also sought and applied for credit from the Iowa company, which was a precursor to their ongoing business relationship." *Id.*

DFA emphasizes the nature and quality of Bassett's contacts with Missouri that resemble FMI's contacts with Iowa. Like FMI, Bassett sought and received credit

from a company in the forum state. FMI solicited Wells Dairy's business "knowing that Wells Dairy was an Iowa corporation," *id.*; Bassett solicited DFA's business knowing that DFA had a Missouri headquarters.

DFA cites its activities at its Missouri headquarters as an additional contact between Bassett and Missouri. At its headquarters, DFA determines the price and quantity of products it offers to customers, processes purchase orders, generates invoices, processes payments, coordinates inventory, and administers the preparation of shipping documents.

Considered together, however, the nature and quality of Bassett's contacts with Missouri do not support jurisdiction under the Due Process Clause. *See Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.*, 558 F.2d 450, 455 (8th Cir. 1977) (finding that due process prevented jurisdiction where the contracts were not negotiated or executed in the forum, would not be performed there, the goods involved neither originated from nor were destined there, and the foreign actor employed no salesmen or agents there). No "prior negotiations" occurred in Missouri; they took place between Butterfield in Michigan (or while traveling) and Diaz in Canada. *Sybaritic, Inc. v. Interport Int'l, Inc.*, 957 F.2d 522, 525 (8th Cir. 1992) (finding that due process prevented jurisdiction where the foreign actor's contract with the forum resident was "negotiated, drafted, presented and executed" out of the forum, even though the foreign actor visited the forum resident once and communicated with the forum resident by telephone and mail); *Atlas Scrap*, 558 F.2d at 455; *see Scullin Steel*, 676 F.2d at 310.

Nor do DFA's headquarters activities support the exercise of jurisdiction. The contract did not contemplate that DFA would perform coordination and processing in Missouri. *See Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 n.4 (8th Cir. 1977) (finding that the due process clause prevented jurisdiction where "[m]ost of the sales accounting for the large dollar volume involved

transactions intentionally arranged and consummated apart from [the forum], with only the invoicing coming from [the forum]."); *cf. K-V Pharm.*, 648 F.3d at 594 (finding sufficient minimum contacts where the contract – amended at a face-to-face meeting in the forum – contemplated shipment of product and payment to the forum); *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 591-92 (8th Cir. 2001) (finding sufficient minimum contacts where the contract contemplated products manufactured in the forum, payments to the forum, and continuing assistance from the nonresident defendant to the plaintiff in the forum). *See generally Hanson*, 357 U.S. at 253 ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."). Bassett contracted to purchase product that was manufactured not in Missouri, but in Colorado. The contract called for payment not to Missouri, but to Illinois. The contract called for delivery not to Missouri, but to Mexico. *See K-V Pharm.*, 648 F.3d at 594 (finding that the contract's requirement of shipment to the forum was a contact supporting personal jurisdiction). That DFA administered the contract in Missouri is "random, fortuitous, or attenuated." *Burger King*, 471 U.S. at 486 (internal quotation marks omitted).

Nor does Bassett's use of credit support the exercise of jurisdiction. Bassett's access to credit differs from FMI's. FMI contracted to purchase on credit product manufactured in Iowa for delivery in Iowa and to remit payment to Iowa; the combination of these contacts alerted FMI that it should reasonably anticipate being haled into court in Iowa. *Wells Dairy*, 607 F.3d at 519. Here, nothing in Bassett's contract to purchase on credit product manufactured in Colorado for delivery in Mexico and to remit payment to Illinois alerted Bassett that it should reasonably anticipate being haled into court on that contract in Missouri.

Nor do Bassett's communications with DFA in Missouri support the exercise of jurisdiction. *Viasystems*, 646 F.3d at 594 (finding that "scattered e-mails, phone calls, and a wire-transfer of money" to the forum were insufficient contacts to support

jurisdiction); ***Inst. Food Marketing Assocs., Ltd. v. Golden State Strawberries, Inc.***, 747 F.2d 448, 456 (8th Cir. 1984) (finding that due process prevented jurisdiction where the contacts between the foreign actor and the forum were limited to phone conversations and written correspondence); ***Atlas Scrap***, 558 F.2d at 455.

The quantity of Bassett's contacts are not distinguishable from either NRUC's or FMI's. Litigation in Missouri likely inconveniences Bassett, while litigation elsewhere likely inconveniences DFA. While Missouri has an interest in providing a forum for a company with its headquarters here, that does not overcome the insufficiency of Bassett's contacts with Missouri.

The Due Process Clause does not permit the exercise of jurisdiction over Bassett in Missouri on this contract.

\* \* \* \* \* \* \*

The judgment of the district court is affirmed.

_____