SELECT COMFORT CORPORATION, Plaintiff,

v.

Firas **KITTANEH**, Mohd Kittaneh, Simply Rest, LLC and One Mall Group, LLC, Defendants.

Civ. No. 13-1684 (RHK/SER)

United States District Court, D. Minnesota.

Signed 02/26/2014

Andrew S. Hansen, Samuel R. Hellfeld, Dennis E. Hansen, Oppenheimer Wolff & Donnelly LLP, Minneapolis, Minnesota, for Plaintiff.

Seth J.S. Leventhal, Leventhal pllc, Minneapolis, Minnesota, Paul A. Godfread, Godfread Law Firm, P.C., Woodbury, Minnesota, for Defendants.

## MEMORANDUM OPINION AND ORDER

RICHARD H. KYLE, United States District Judge

### INTRODUCTION

Plaintiff Select Comfort Corporation ("Select Comfort") designs, manufactures, and sells the "Sleep Number" adjustable air bed. In 2013, it commenced this trademark-infringement action against brothers Firas and Mohd Kittaneh and two entities controlled by them, Simply Rest, LLC ("Simply Rest") and One Mall Group, LLC ("One Mall") (together, the "Corporate Defendants"), alleging that Defendants were selling competing air beds trading on the Sleep Number name and mark. After the Corporate Defendants failed to respond to the Summons and Complaint, Select Comfort obtained an entry of default from the Clerk of the Court. The Corporate Defendants now move to set aside that default pursuant to Federal Rule of Civil Procedure 55(c), and the Kittanehs separately move to dismiss for lack of personal jurisdiction. For the reasons that follow, the Motion to Set Aside Default will be granted and the Motion to Dismiss for lack of personal jurisdiction will be denied.

### BACKGROUND

Select Comfort is a Minnesota company that designs and markets air beds, including the Sleep Number bed, which uses "uniquely designed air chambers to provide a gentle cushion of support that can be easily adjusted to an individual's preference, comfort and firmness." (Am. Compl. ¶ 16.) Sleep Number beds are sold "in major shopping malls and other locations" across the country, as well as through the websites selectcomfort.com and sleepnumber.com. (Id. ¶ 21.) Select Comfort's products have acquired a reputation for quality and it is well known as "the leading seller of premium air-supported sleep products." (Id. ¶¶ 23-24.) It has trademarked the phrases "Select Comfort" and "Sleep Number," and these marks "are among the most widely recognized trademarks in the bedding industry." (Id. ¶¶ 17-18, 25.)

The Kittanehs are Arizona residents who founded and direct the daily operations of One Mall and Simply Rest, which are Arizona limited liability companies. (Id. ¶¶ 3-6, 27-28.) Firas Kittaneh is One Mall's CEO and one of two managing members of Simply Rest. (Id. ¶ 27.) Firas's brother Mohd is One Mall's CFO and President and the other managing member of Simply Rest. (Id. ¶ 28.) According to the Amended Complaint, "Defendants operate the domain name and website simplyrest.com through which they sell air mattresses and related products to purchasers in all 50 states, including Minnesota." (Id. ¶ 26.) In doing so, Defendants allegedly use Select Comfort's name and trademarks, confusing and deceiving consumers as to the relationship (or lack thereof) between Select Comfort and Defendants. (Id. ¶¶ 33, 49.) Select Comfort also alleges that Defendants misrepresent the qualities of Sleep Number beds and make additional false representations regarding their own competing products. (Id. ¶¶ 70-80.) And according to the Amended Complaint, the Kittanehs "personally directed and sanctioned the Corporate Defendants' use of the false and misleading claims" and "have the ability to cease this conduct, but have refused to do so." (Id. ¶ 91.)

Select Comfort commenced this action on June 27, 2013, alleging *inter alia* that Defendants had engaged in trademark infringement, trademark dilution, false advertising, and unfair competition under the Lanham Act, 15 U.S.C. § 1051 *et seq.* The Corporate Defendants quickly were served with process through the Arizona Corporation Commission, the statutory agency authorized to accept process on their behalf. And after they failed to timely respond,

the Clerk of the Court granted Select Comfort's Application and entered default against the Corporate Defendants on August 19, 2013. (See Doc. Nos. 8, 11.)

Meanwhile, Select Comfort attempted to serve the Kittanehs, but they repeatedly evaded service. A process server first attempted to serve them at their condominium building, only to be rebuffed by the building's concierge, who refused to permit entry. Service also was attempted at the Corporate Defendants' place of business, but in each instance the process server was told that the Kittanehs were not present or were not available. Ultimately, 20 separate attempts were made to serve the Kittanehs, to no avail.

Undeterred, Select Comfort then moved the Court to permit service through alternative means, including mailing copies of the Summons and Complaint to the Kittanehs, leaving copies with the concierge, and affixing copies to the Corporate Defendants' entrance doors. Magistrate Judge Rau granted Select Comfort's Motion on September 13, 2013, and service was then completed through these alternative means.

The Corporate Defendants now move to set aside the Clerk's entry of default against them. The Kittanehs separately move to dismiss this action for lack of personal jurisdiction. Both Motions have been fully briefed and are ripe for disposition.

## ANALYSIS

### I. Default

■ Under the Federal Rules of Civil Procedure, a plaintiff seeking a default judgment must proceed in two sequential steps. First, upon the plaintiff's application, the Clerk of the Court enters the defendant's default on the docket when the defendant has failed to plead or otherwise defend. Fed. R. Civ. P. 55(a). Second, the plaintiff can then move the Clerk to enter a default judgment, offering proof of the amount to which it is entitled. Fed. R. Civ. P. 55(b). Rule 55(c) authorizes a court to set aside both an entry of default under Rule 55(a) and a default judgment under Rule 55(b). But "relief from a default judgment requires a stronger showing of excuse than relief from a mere default order," since it is "likely that a party who promptly attacks an entry of default, rather than waiting for grant of a default judgment, was guilty of an oversight and wishes to defend the case on the merits." Johnson v. Dayton Elec. Mfg. Co., 140 F.3d 781, 783 (8th Cir.1998).

■ The standard for setting aside an entry of default is "good cause," Fed. R. Civ. P. 55(c), and courts consider several factors in determining whether a defendant has made that showing, including whether it was blameworthy or culpable, whether it has a meritorious defense, and whether the plaintiff would be prejudiced if the default were excused. Stephenson v. El–Batrawi, 524 F.3d 907, 912 (8th Cir. 2008). Moreover, there exists a "judicial preference for adjudication on the merits," Chorosevic v. MetLife Choices, 600 F.3d 934, 947 (8th Cir.2010), and hence disposing of a case via default "should be a rare judicial act," Edgar v. Slaughter, 548 F.2d 770, 773 (8th Cir.1977).

■ Bearing these principles in mind, the Court concludes that the entry of default against the Corporate Defendants should be set aside here. To be sure, not all of the salient factors weigh in the Corporate Defendants' favor. For example, they offer only bare generalities about their defenses. See Stephenson, 524 F.3d at 914 ("[T]he trial court must have before it more than mere allegations that a defense exists."). But the Court is mindful of the strong preference for resolving cases on the merits rather than by default, and it perceives no prejudice to Select Comfort

by setting aside the default and proceeding with litigation.[1] Moreover, there is no evidence that the Corporate Defendants intentionally delayed responding to the Complaint. Select Comfort attempts to lump all Defendants together and asserts that they *all* attempted to "avoid this litigation by evading service." (Doc. No. 39 at 14.) But while the *Kittanehs* may have attempted to evade service of process, it is undisputed that the *Corporate Defendants* were quickly served through the Arizona Corporation Commission. The Court perceives no intentionally dilatory tactics on the Corporate Defendants' part that would militate against setting aside the default.

## II. Personal jurisdiction

■■■ Next, the Court considers the Kittanehs' Motion to Dismiss for lack of personal jurisdiction. In order to survive that Motion, Select Comfort must make only a prima facie showing of jurisdiction. E.g., Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 647 (8th Cir.2003). This requires it to proffer "sufficient facts ... to support a reasonable inference that [the Kittanehs] can be subjected to jurisdiction within [Minnesota]." Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc., 702 F.3d 472, 475 (8th Cir.2012) (citations omitted). Because the Kittanehs controvert the existence of jurisdiction, Select Comfort's showing "must be tested[ ] not by the pleadings alone, but by the affidavits and exhibits presented with the motion[ ] and in opposition thereto." Id. (quotation omitted). And where, as here, the Court

does not hold a hearing, it must "look at the facts in the light most favorable to [Select Comfort], and resolve all factual conflicts in [its] favor." Pangaea, Inc. v. Flying Burrito LLC, 647 F.3d 741, 745 (8th Cir.2011) (quotation omitted).

■■■ To establish a prima facie case of personal jurisdiction, Select Comfort must show (1) Minnesota's long-arm statute has been satisfied and (2) exercising jurisdiction would comport with the Due Process Clause of the Fourteenth Amendment.[2] E.g., Guinness Import Co. v. Mark VII Distribs., Inc., 153 F.3d 607, 613 (8th Cir.1998); Minn. Mining & Mfg. Co. v. Nippon Carbide Indus. Co., 63 F.3d 694, 696–97 (8th Cir.1995). These two inquiries collapse into one, however, because Minnesota's long-arm statute extends jurisdiction to the outer limits of the Due Process Clause. E.g., Guinness, 153 F.3d at 614; Soo Line R.R. Co. v. Hawker Siddeley Can., Inc., 950 F.2d 526, 528 (8th Cir.1991).

■■■ Due process requires that the Kittanehs have sufficient "minimum contacts with [Minnesota] that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Daimler AG v. Bauman, —— U.S. ——, 134 S.Ct. 746, 754, 187 L.Ed.2d 624 (2014) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). "The central question" is whether they have "purposefully availed [themselves] of the privilege of conducting activities in [Minnesota] and should, therefore, reasonably anticipate being haled into

---

1. Select Comfort argues it has been prejudiced because the Corporate Defendants have continued their "unlawful" conduct while not responding to the Complaint. (Doc. No. 39 at 19.) But had it wanted to immediately halt that conduct, Select Comfort could have moved for a default judgment (including injunctive relief) after obtaining the Clerk's entry of default, yet it never did so. Nor has Select Comfort moved for *preliminary* injunc-

tive relief in the eight months since commencing this action, belying its allegation of prejudice.

2. For a cogent explanation why the Fourteenth Amendment, rather than the Fifth Amendment, applies in this federal-question case (through the back door of Federal Rule of Civil Procedure 4(k)), see Wallace v. Mathias, 864 F.Supp.2d 826, 832–34 (D.Neb.2012).

court [here]." <u>Pecoraro v. Sky Ranch for Boys, Inc.</u>, 340 F.3d 558, 562 (8th Cir.2003) (citing <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). The Eighth Circuit has instructed district courts to consider five factors in answering this "central question": (1) the nature and quality of the defendant's contacts with the forum; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts;[3] (4) the forum state's interest in providing a forum for the plaintiff; and (5) the convenience of the parties. <u>Id.</u> (citation omitted). The first three factors are of primary importance, while the last two factors are considered secondary. <u>Id.</u>

■■■ Here, the Kittanehs note that they do not reside or own property in Minnesota, solicit business here, or derive substantial revenue from Minnesota activities. (<u>See</u> Doc. Nos. 35, 36.) Select Comfort does not dispute those assertions but hones in on the website simplyrest.com, through which Defendants purportedly "interact with and sell products to consumers in Minnesota." (Doc. No. 37 at 3-4.) Where a defendant's contacts with the forum state "have occurred almost exclusively over the [i]nternet," the Court analyzes specific jurisdiction using the "sliding scale" laid out in <u>Zippo Manufacturing Co. v. Zippo Dot Com, Inc.</u>, 952 F.Supp. 1119, 1124 (W.D.Pa.1997). <u>See</u> <u>Lakin v. Prudential Sec., Inc.</u>, 348 F.3d 704, 711 (8th Cir. 2003) (adopting <u>Zippo</u>). Under this test, the more "interactive" a website, the more likely personal jurisdiction may be exercised over its operator. Conversely, the more "passive" a website, the less likely its operator has the "minimum contacts" necessary for personal jurisdiction. At the "interactive" end of the spectrum "are situations where a defendant clearly does business over the [i]nternet," while the "passive" end of the spectrum encompasses "situations where a defendant has simply posted information on an [i]nternet [w]eb site which is accessible to users in foreign jurisdictions." <u>Zippo</u>, 952 F.Supp. at 1124.

■■■ Here, it is undisputed that the simplyrest.com website is "interactive," which tends to support a finding of jurisdiction. <u>See, e.g.</u>, <u>Quality Bicycle Prods., Inc. v. BikeBaron, LLC</u>, Civ. No. 12–2397, 2013 WL 3465279, at *3–4 (D.Minn. July 10, 2013) (Kyle, J.) (noting that website allowing visitors to complete purchases and enter into binding contracts was interactive and supported jurisdiction). Moreover, "the alleged harm is monetary and reputational damage to [Select Comfort], a Minnesota company," and hence its alleged injury "was suffered in Minnesota[,] and Minnesota courts have routinely recognized their interest in providing a forum for those injured in-state." <u>Id.</u> at *4.[4] The relevant factors, therefore, favor the exercise of jurisdiction.

■■■ But the foregoing does not fully dispose of the Kittaneh's Motion, because it leaves open the question of *who* is subject to jurisdiction here. As noted above, Select Comfort repeatedly lumps all Defendants together without delineating which contacts are attributable to which

---

**3.** This third factor distinguishes "specific" from "general" jurisdiction. Specific jurisdiction, the narrower of the two, exists in causes of action that arise out of a defendant's contacts with the forum state. <u>Daimler AG</u>, 134 S.Ct. at 754. General jurisdiction, by contrast, is broader, reaching any cause of action against a defendant when its contacts with the forum "are continuous and systematic."

<u>Id.</u> (citation omitted). Here, Select Comfort argues only that specific jurisdiction exists over the Kittanehs.

**4.** As Minnesota's long-arm statute applies here, the Court must consider its interpretation by Minnesota state courts. <u>See</u> <u>Myers v. Casino Queen, Inc.</u>, 689 F.3d 904, 909 (8th Cir.2012).

Defendants, and it continually describes simplyrest.com as "Defendants' website" (Doc. No. 37 at 1, 3-6, 8-9, 13, 22-23), bypassing well-established law that "[e]ach defendant's contacts with the forum State must be assessed individually," Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n. 13, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). Nevertheless, the Court concludes that the allegations here suffice to establish a "minimal" prima facie case of personal jurisdiction over each of the Kittanehs. K–V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 592 (8th Cir.2011).

This case differs from the undersigned's recent decision in Quality Bicycle, in which the plaintiff pointed to a corporate defendant's interactive website but then sought to exercise jurisdiction over the corporation's CEO simply because of his title. 2013 WL 3465279, at *5 (CEO's "status as a corporate officer ... alone cannot establish sufficient contacts to exercise personal jurisdiction") (citation omitted). There, the plaintiff had included no allegations that the individual had any hand in the challenged conduct. Id. Here, by contrast, Select Comfort has alleged that (1) simplyrest.com is "personally own[ed] and control[led]" by Firas Kittaneh, (2) the Kittanehs "personally designed and executed the ... advertising scheme that resulted in" the alleged infringement, and (3) the Kittanehs "personally participated in and directed the wrongful conduct" alleged in the Amended Complaint and directly benefited from it. (Am. Compl. ¶¶ 13, 15, 27, 32.) Notably, the Kittanehs have submitted lengthy Affidavits in support of their Motion, but they nowhere deny these allegations. And in the Court's view, such a tacit acknowledgement of personal involvement in the challenged conduct is sufficient to establish a prima facie case of personal jurisdiction. See, e.g., Balenciaga Am., Inc. v. Dollinger, No. 10 Civ. 2912, 2010 WL 3952850, at *4–5 (S.D.N.Y. Oct. 8, 2010) (exercising jurisdiction over two individuals operating websites selling counterfeit versions of plaintiffs' products because plaintiffs alleged the individuals controlled one infringing website and owned and operated others); Quokka Sports, Inc. v. Cup Int'l Ltd., 99 F.Supp.2d 1105, 1114 (N.D.Cal. 1999) (exercising jurisdiction over New Zealand-based owners of website infringing plaintiff's trademark because they were "personally involved in the activities of operating and developing the [infringing] website").

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, it is **ORDERED** that (1) the Motion of Simply Rest and One Mall to Set Aside Entry of Default (Doc. No. 29) is **GRANTED**, and the Clerk's entry of default against these Defendants (Doc. No. 11) is **SET ASIDE**, and (2) the Kittanehs' Motion to Dismiss for Lack of Jurisdiction (Doc. No. 27) is **DENIED**.