# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No.10-3403

_____

| | | |
|---|---|---|
| K-V Pharmaceutical Company, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| J. Uriach & CIA, S.A., | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: April 14, 2011
Filed: August 3, 2011

_____

Before WOLLMAN, GILMAN,[1] and MELLOY, Circuit Judges.

_____

GILMAN, Circuit Judge.

K-V Pharmaceutical Company (KV), a Delaware corporation with its principal place of business in St. Louis, Missouri, sued J. Uriach & CIA, S.A. (Uriach), a Spanish corporation with its principal place of business in Barcelona, Spain, for breach of contract and misappropriation of trade secrets. The lawsuit was filed in the United States District Court for the Eastern District of Missouri.

_____

[1]The Honorable Ronald Lee Gilman, United States Court of Appeals for the Sixth Circuit, sitting by designation.

Uriach moved to dismiss the complaint on three grounds: (1) lack of personal jurisdiction; (2) *forum non conveniens*; and (3) failure to state a claim upon which relief can be granted. The district court granted Uriach's motion to dismiss for lack of personal jurisdiction, declined to reach the *forum-non-conveniens* argument, and denied the motion for failure to state a claim without prejudice. KV timely appealed. For the reasons set forth below, we reverse the district court's decision to dismiss the complaint for lack of personal jurisdiction and remand the case for further proceedings consistent with this opinion.

## I.  Background

KV and Uriach entered into a contract in May 1993 to develop, manufacture, and sell an antifungal cream with an ingredient developed by Uriach—Flutrimazole—and a drug-delivery system developed by KV—Site Release. Uriach was to sell the antifungal cream throughout the world, except for the United States, Canada, and Mexico, where KV had the rights to sell the cream. The parties amended their contract twice, first in October 1998 and later in June 2002.

KV finally terminated the contract in 2005. Uriach then allegedly failed to return certain trade secrets and confidential information to KV, and later began marketing and selling a cream that allegedly uses KV's Site Release system. KV sued Uriach in Missouri for breach of contract (specifically, a breach of the confidentiality provisions, which continue for 10 years after contract termination) and for misappropriation of trade secrets, seeking damages and an injunction to prevent Uriach from selling the antifungal cream in question.

In granting Uriach's motion to dismiss for lack of personal jurisdiction, the district court found that Uriach's "only contact with Missouri are letters, telephone calls, one meeting, and a Missouri choice of law provision. These contacts, considered in the aggregate, are insufficient to establish personal jurisdiction." KV Pharmaceutical

Co. v. J. Uriach & CIA S.A., 743 F. Supp. 2d 1073, 1079 (E.D. Mo. 2010) (citation omitted.) The district court further reasoned that the contract's "contemplated future consequences would not occur in Missouri" because Uriach "agree[d] to do tasks that were entirely restricted to Europe or excluded the United States, Canada, and Mexico." Id. at 1078 (internal quotation marks omitted).

Uriach argues that we should affirm the district court's personal-jurisdiction decision or, in the alternative, that we should dismiss KV's complaint based on either *forum non conveniens* or on the complaint's failure to state a claim. We will consider each of these arguments in turn below.

## II. Analysis

### A. Personal jurisdiction

The primary issue on appeal is whether the district court has personal jurisdiction over Uriach. We review personal-jurisdiction issues de novo. Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004). To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts "to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state." Id. (original brackets and internal quotation marks omitted); accord Digi-Tel Holdings, Inc. v. Proteq Telecommunications (DTE), Ltd., 89 F.3d 519, 522 (8th Cir. 1996). Although "[t]he evidentiary showing required at the prima facie stage is minimal," Johnson v. Arden, 614 F.3d 785, 794 (8th Cir. 2010) (internal quotation marks omitted), the "showing must be tested, not by the pleadings alone, but by the affidavits and exhibits" supporting or opposing the motion, Dever, 380 F.3d at 1072 (internal quotation marks omitted). We must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in its favor in deciding whether the plaintiff made the requisite showing. Digi-Tel, 89 F.3d at 522.

Personal jurisdiction in a diversity case exists "only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." Dever, 380 F.3d at 1073 (internal quotation marks omitted). "Missouri's long-arm statute authorizes personal jurisdiction over defendants who, *inter alia*, transact business [or] make a contract . . . within the state." Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG, — F.3d —, —, 2011 WL 2899147, at * 2 (8th Cir. July 21, 2011) (citing Mo. Rev. Stat. § 506.500.1). In adopting the long-arm statute, the Missouri legislature "intended to provide for jurisdiction, within the specific categories enumerated in the statutes [e.g., transacting business or making a contract within the state,] to the full extent permitted by the due process clause." State ex rel. Metal Serv. Ctr. of Ga., Inc.v. Gaertner, 677 S.W.2d 325, 327 (Mo. 1984) (en banc). The reasons why Uriach's actions fit within both of these categories are the same as the reasons why extending personal jurisdiction over Uriach comports with the Due Process Clause. We will therefore focus on the due process issue rather than needlessly repeat ourselves.

Due process requires that the defendant purposefully establish "minimum contacts" in the forum state such that asserting personal jurisdiction and maintaining the lawsuit against the defendant does not offend "traditional conceptions of fair play and substantial justice." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 464, 474-477 (1985) (brackets and internal quotation marks omitted). The defendant must have engaged in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id. at 475 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). This purposeful-availment requirement is met where the "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." Id. at 474 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295 (1980)).

-4-

Based on these principles, the Eighth Circuit has established five factors that must be considered in determining whether sufficient minimum contacts exist for personal jurisdiction: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." Johnson, 614 F.3d at 794. Although "the first three factors are primary factors, and the remaining two are secondary factors," we look at all of the factors and the totality of the circumstances in deciding whether personal jurisdiction exists. Id.

Before addressing the five factors set forth above, we first turn to the role of contracts in the personal-jurisdiction analysis. A contract between a plaintiff and an out-of-state defendant is not sufficient in and of itself to establish personal jurisdiction over the defendant in the plaintiff's forum state. Burger King, 471 U.S. at 478-79. Personal jurisdiction, moreover, does not turn on "mechanical tests or on conceptualistic theories of the place of contracting or of performance." Id. at 478 (ellipses and internal quotation marks omitted). The Supreme Court has instead

> emphasized the need for a "highly realistic" approach that recognizes that a "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.

Id. at 479 (quoting Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 316-17 (1943)).

With these principles in mind, Uriach's purposeful contacts with the state of Missouri include the following:

- Letters, emails, and telephone calls to KV before May 1993 that were part of the contract negotiations.

- Letters, emails, and telephone calls to KV after the contract was executed but before the contract was amended for the second time in 2002. The head of Uriach's legal department, Joaquin Uriach, admits that the parties had numerous communications from July 1993 to February 1994 "regarding the information Uriach needed, among other things, to prepare the pharmaceutical dossier to obtain regulatory approval in Spain." He also admits that "[a]t least twenty Uriach personnel were actively involved in the contract negotiations with KV, the years of communication with KV[,] and the work Uriach undertook to develop the vaginal cream." The fact that at least twenty of Uriach's employees were engaged with KV at some level in contract negotiations and in years of communications supports the conclusion that the parties had significant contacts over the life of the contract.

- In a July 2001 letter, Uriach specifically proposed meeting in Missouri to renegotiate the contract's payment terms in light of concerns that Uriach had with KV's performance. This meeting occurred in September 2001 when personnel from Uriach traveled to KV's facility in Missouri to discuss these matters. The meeting, together with communications that occurred afterwards, led to the renegotiation of the contract in June 2002.

- Uriach requested that KV send it samples of a competitor's currently marketed product of antifungal cream so that Uriach could see how the finished product would look and how the applicators were used. KV sent these samples to Uriach in September 1993.

· Uriach made payments to KV under the contract. An email in 2005 from Uriach to KV stated that "we will pay you milestones and royalties as we have always done until now." The record suggests that these payments were significant. A letter from KV to Uriach in May 2000 asks when KV "can expect to receive the $100,000 which is currently payable under article 2.1 of the Agreement."

In addition to the above, which covers the parties negotiations and their actual course of dealing, we must consider the terms of the contract and its contemplated future consequences in deciding whether personal jurisdiction over an out-of-state defendant exists. See Burger King, 471 U.S. at 478-79. Section 2.1 of the contract provides that Uriach will make periodic payments to KV, ranging from $50,000 to $150,000, when certain steps in the development of the final product were completed (milestone payments). For example, Uriach was to pay KV $50,000 upon initiation of the feasibility prototype development and $150,000 upon the initial regulatory approval of the antifungal cream. Uriach also promised in sections 3.4 and 8.1 of the contract to pay KV royalty fees based on a percentage of Uriach's net sales of the product. Similarly, KV agreed in section 4.4(d) to pay Uriach royalty fees based on a percentage of KV's net sales of the cream.

Uriach agreed in section 6.1 to sell and ship its antifungal agent, Flutrimazole, to KV in Missouri so that KV could make the cream and sell it. KV agreed to pay Uriach for the Flutrimazole not later than 30 days after the date KV received it. The Flutrimazole was to be shipped "f.o.b. KV's facility, St. Louis, Missouri." Moreover, "[t]itle to [F]lutrimazole sold by Uriach to KV shall pass to KV upon delivery by Uriach." A delivery term that requires a nonresident defendant to deliver an item to a plaintiff in the plaintiff's forum state supports the existence of personal jurisdiction over the nonresident defendant. See Papachristou v. Turbines, Inc, 902 F.2d 685, 686 (8th Cir. 1990) (en banc).

Although the record reflects that many of the above terms were never carried out because the contract was terminated before the cream was successfully developed, both these terms and the future consequences that the parties contemplated in fashioning them support personal jurisdiction. Uriach had agreed to engage in substantial activity in Missouri. This included its agreement to pay KV royalty fees and to ship KV the Flutrimazole should the contract go as planned. Based on the level of involvement that Uriach actually had and could reasonably be expected to have in Missouri under this contract, it could reasonably anticipate being haled into court in Missouri in the event of an alleged breach.

The choice-of-law provision in the contract further supports a finding of personal jurisdiction over Uriach. That provision states that "[t]his Agreement shall be deemed to have been entered into and shall be governed by and construed under the laws of the State of Missouri, United States of America, except that no conflict of laws provision shall be applied to make the laws of any other jurisdiction applicable thereto." Although choice-of-law provisions specifying that the forum state's laws govern are insufficient on their own to confer personal jurisdiction, they provide further evidence of a defendant's "deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." Burger King, 471 U.S. at 482.

The totality of the circumstances convinces us that the minimum contacts necessary to confer personal jurisdiction over Uriach exist in the present case. Uriach's actual contacts with Missouri include its officials coming to Missouri in September 2001 to renegotiate the contract with KV, its paying money to KV as agreed in the contract, and its exchanging many letters, emails, and telephone calls with KV throughout the 12 years that the contract was in existence. Moreover, Uriach expected to have even more extensive contacts with Missouri, as the terms of the contract demonstrate. These considerations tip the scales in favor of the forum state on the first two factors—(1) the nature and quality of the contacts, and (2) the quantity of the contacts.

-8-

The third factor (the relationship of the cause of action to the contacts) also favors finding jurisdiction in the forum state because KV's breach-of-contract and misappropriation-of-trade-secrets claims are related to the contacts that Uriach had with Missouri. KV alleges that it developed a proprietary manufacturing process to incorporate Site Release with other drugs, such as an antifungal agent; that it shared this process and details about Site Release with Uriach as provided for under the contract; that the process and details it shared constitute trade secrets and confidential information; that Uriach retained these trade secrets and confidential information after the contract was terminated; and that Uriach then improperly used that retained knowledge to manufacture and market an antifungal cream in Europe. If these companies had not been involved in a long-term contractual relationship with each other, Uriach would not have had access to KV's alleged trade secrets. The three primary factors, see Johnson v. Arden, 614 F.3d 785, 794 (8th Cir. 2010), thus weigh in favor of finding personal jurisdiction over Uriach.

As to the fourth factor, Missouri obviously has an interest in providing a forum for resident corporations like KV. The fifth and final factor, on the other hand, is essentially neutral. This factor—the convenience to the parties—largely balances out wherever the trial is held. A trial in Spain would be just as inconvenient for KV as a trial in Missouri would be for Uriach.

In our consideration of all five factors, we find the present case distinguishable from Digi-Tel Holdings, Inc. v. Proteq Telecommunications (DTE), Ltd., 89 F.3d 519 (8th Cir. 1996), the case on which the district court primarily relied in concluding that personal jurisdiction was absent. True enough, the Singapore company in Digi-Tel exchanged telephone calls, letters, and faxes with the Minnesota company, and the contract contained a Minnesota choice-of-law provision. Id. at 523. But all of the face-to-face meetings occurred in Singapore and "[n]o part of the contract was to be performed in Minnesota." Id. at 525. The Singapore company "was to develop and produce the phones [that the Minnesota company purchased] overseas and [was to]

-9-

transfer ownership to [the Minnesota company] in Singapore." Id. Because the "delivery term was 'F.O.B. Singapore' . . . , the seller was obligated to deliver to Singapore and nowhere else." Id. In sum,

> no shipment of actual product came into Minnesota. The only domestic element of the agreement related to the interpretation of the contract under Minnesota law.
>
> Thus the negotiations, meetings, production, and delivery were all centered in Singapore. . . . [The Singapore company] did not create a substantial connection between itself and Minnesota, it merely engaged in negotiations with a purchaser who happened to reside in Minnesota.

Id. In contrast, the parties here (1) had a long-term product-development contract that would require Uriach to have a continuing relationship with Missouri; (2) the parties engaged in a face-to-face meeting in Missouri to negotiate an amendment to their contract; (3) the contract terms governing the sale and delivery of Flutrimazole required Uriach to ship the drug to Missouri; and (4) Uriach made payments to KV, which is based in Missouri. These facts distinguish Digi-Tel from the case before us.

For the same reasons, the present case is distinguishable from our circuit's recent decision in Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG, — F.3d —, —, 2011 WL 2899147 (8th Cir. July 21, 2011). In Viasystems, the fans manufactured in Germany by the defendant, EBM-Papst St. Georgen GmbH & Co., KG (St. Georgen), a German corporation, were shipped to China and "sold to ebm-papst Shanghai, a Chinese corporation, which resold them to Viasystems' Chinese subsidiary. After the fans were installed, the completed base units were sold [by Viasystems] to [a Swedish company] for use in mobile phone facilities in Japan." Id. After some of the fans malfunctioned, St. Georgen and Viasystems engaged in settlement negotiations, resulting in the exchange of emails and telephone calls and a partial payment by St. Georgen to Viasystems. Id. at * 1-2. Viasystems then sued St.

Georgen under several theories for damages caused by the malfunctioning fans. Id. at *1.

But Viasystems did not have a contract directly with St. Georgen for the purchase of the fans. See id. Moreover, neither the fans nor the base units that incorporated the fans ever entered the United States. Id. And Viasystems and St. Georgen never engaged in face-to-face meetings in Missouri. See id. at *1-2. The court therefore concluded that St. Georgen's contacts with Missouri—"scattered emails, phone calls, and a wire-transfer of money to Viasystems in Missouri"—were incidental and did not "constitute a deliberate and substantial connection with the state such that St. Georgen could reasonably anticipate being haled into court there." See id. at *3 (internal quotation marks omitted). All of this is in stark contrast to Uriach's contacts with Missouri as set forth above in distinguishing Digi-Tel from the present case.

The principal case relied on by Uriach to argue that personal jurisdiction is absent, Sybaritic, Inc. v. Interport Int'l, Inc., 957 F.2d 522 (8th Cir. 1992), is also distinguishable from the present case. Sybaritic involved a suit by a corporation with its principal place of business in Minnesota against Interport, a California corporation, based upon Interport's agreement to act as Sybaritic's sales agent in Japan. Id. at 523. Before the parties entered into their agency contract, Interport's president visited Minnesota and the parties exchanged telephone and mail communications. Id. at 525. But Sybaritic admitted that the contract was "negotiated, drafted, presented and executed in Japan." Id. at 525 (internal quotation marks omitted). Interport's contacts with Minnesota thus "involved only preliminary negotiations." Id. Moreover, this court reasoned that the activities related to the contract that occurred in Minnesota, such as the "manufacture of product [and] origination of payments," were the "unilateral acts" of Sybaritic rather than any actions by Interport that would establish personal jurisdiction in the forum state. Id.

In contrast, Uriach's contacts with KV in Missouri—which include letters, emails, telephone calls, a face-to-face meeting, the shipment of samples, and payments—extend well beyond preliminary negotiations. And the contract called on Uriach to engage in even more contact with Missouri, including the shipment of Flutrimazole to KV in St. Louis. These facts distinguish <u>Sybaritic</u> from the case before us.

In sum, we find that Uriach's contacts with Missouri substantially exceed the contacts of the defendants in <u>Digi-Tel</u>, <u>Viasystems</u>, and <u>Sybaritic</u> with their respective forum states. Unlike the defendants in those cases, Uriach's contacts with Missouri are such that Uriach "should reasonably anticipate being haled into court there." <u>Burger King</u>, 471 U.S. at 474 (quoting <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 295 (1980)). We therefore conclude that the proper application of the five-factor test set forth in <u>Johnson</u>, 614 F.3d at 794, supports hearing the present case in Missouri.

## B.    Forum non conveniens

This leads us to Uriach's alternative argument that KV's complaint should be dismissed based on *forum non conveniens*. Before we address the merits of that issue, a threshold question is whether we should even consider the argument. Although the district court did not reach it, a prevailing party may assert any ground in support of the judgment regardless of whether the court below relied upon or considered that ground. <u>United States v. Arthur Young & Co.</u>, 465 U.S. 805, 814 n.12 (1984). And Uriach did argue below that KV's complaint should be dismissed based on *forum non conveniens*. We will therefore address the argument because no additional facts are needed to resolve this issue. <u>See</u> <u>Orr v. Wal-Mart Stores, Inc.</u>, 297 F.3d 720, 725 (8th Cir. 2002) (holding that a newly raised argument may be considered on appeal "if it is purely legal and requires no additional factual development").

The doctrine of *forum non conveniens* allows a court to decline to exercise jurisdiction and dismiss a case where that case would more appropriately be brought in a foreign jurisdiction. Am. Dredging Co. v. Miller, 510 U.S. 443, 447-49, 449 n.2 (1994). That decision depends on how a court weighs the following private- and public-interest factors as set forth by the Supreme Court:

> An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility [*sic*] of a judgment if one is obtained. . . .

> Factors of public interest also have [a] place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 504, 508-09 (1947); accord Am. Dredging, 510 U.S. at 448-49.

But the doctrine is to be applied only in "exceptional circumstances": "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Gulf Oil, 330 U.S. at 504, 508. "The defendant has the burden

of persuasion in proving all elements necessary for the court to dismiss a claim based on *forum non conveniens*." Reid-Walen v. Hansen, 933 F.2d 1390, 1393 (8th Cir. 1991).

Uriach argues that the private-interest factor based on the location of evidence favors litigating in Spain because the bulk of witnesses and documents necessary to adjudicate KV's claims are located in Spain. But because part of KV's claim will require it to establish that its Site Delivery system includes protectable trade secrets, documents and witnesses from KV's Missouri location will be required as well. So each party faces inconvenience no matter where the case is decided. We thus conclude that the private-interest factors are neutral in the present case.

Turning next to the public-interest factors, Uriach argues that the public-interest factor that favors litigating this case in Spain stems from KV's request for injunctive relief, which, if granted, would deprive Spanish women of an important medical treatment (Uriach's cream), and that the Spanish courts are better equipped to address such a sensitive health-policy issue. But Uriach cites no authority that supports its argument. In the one case that Uriach does cite on this point—Hybritech Inc. v. Abbott Labs., 849 F.2d 1446, 1458 (Fed. Cir. 1988)—the circuit court explicitly approved of the U.S. district court's ability to weigh the public interest implicated by removing a drug from the marketplace because of an injunction. If Uriach has evidence of the serious public harm that might follow should it be enjoined from selling its antifungal cream, then a United States court can consider that evidence just as well as a Spanish court.

A public-interest factor favoring the litigation of this case in the forum state, on the other hand, is that a court in Missouri is in a better position to apply Missouri law, the applicable law based on the contract's choice-of-law provision. As quoted above from Gulf Oil, "[t]here is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case." Gulf Oil, 330

-14-

U.S. at 509. The balance of public-interest factors therefore favors deciding the case in a court located in Missouri.

Because the plaintiff's choice of forum is entitled to significant deference, and because the public-interest factors favor deciding the case in Missouri, we do not find that the present case presents the exceptional circumstances necessary to invoke the doctrine of *forum non conveniens*. We therefore deny Uriach's motion to dismiss based on this ground.

## C.    Failure to state a claim

The final issue is whether KV's complaint fails to state a claim upon which relief can be granted. In denying Uriach's motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court did so without analysis and without prejudice. This issue should therefore be left for the district court to consider on remand.

## III.  Conclusion

For all of the reasons set forth above, we reverse the district court's decision to dismiss the complaint for lack of personal jurisdiction and remand the case for further proceedings consistent with this opinion.

_____