# United States Court of Appeals

### For the Eighth Circuit

_____

No. 17-3170

_____

Jerry Deloney; Peggy Deloney

*Plaintiffs - Appellants*

v.

Dennis Chase; Chasemaster Corporation

*Defendants*

William H. Hallack, Jr.

*Defendant - Appellee*

Ronald Novack, Jr.; Juli Anne Novack

*Defendants*

_____

Appeal from United States District Court
for the Western District of Arkansas - Texarkana

_____

Submitted: September 24, 2018
Filed: December 4, 2018
[Unpublished]

_____

Before SMITH, Chief Judge, MELLOY and STRAS, Circuit Judges.

_____

PER CURIAM.

Jerry and Peggy Deloney appeal the district court's[1] grant of defendant William Hallack, Jr.'s motion to dismiss the Deloneys' claims against Hallack without prejudice for lack of personal jurisdiction. We affirm.

## I. *Background*

The Deloneys, residents of Arkansas, received $460,738.00 in December 2010 from the United States Department of Agriculture (USDA) in an administrative civil rights action alleging racial discrimination by the USDA. The Deloneys filed the action pro se, but they later hired Dennis Chase, a resident of Louisiana, to represent them as a non-lawyer advocate. The USDA requires that all award funds be wired to an escrow account for dispersal to the claimants. As a result, near the conclusion of the civil rights action, Chase contacted Hallack, an attorney, and requested that Hallack undertake limited representation of Chase's claimants and place any funds awarded from Chase's USDA case in Hallack's escrow account. Hallack resides in Louisiana and is not licensed to practice law in Arkansas. Hallack issued an engagement letter to Chase on October 26, 2010. The letter was addressed only to Chase and provided:

> I enjoyed meeting you on October 26, 2010, concerning my firm's representation of your principal claimants against the [USDA]. I have completed a conflict of interest search and determined that there are no conflicts at this time, so I can accept this matter. I will be doing the following to represent your principal claimants:
>
> 1)   Reviewing and revising settlement documents
> 2)   Assisting principal claimants in execution of settlement documents

[1]The Honorable Susan O. Hickey, United States District Judge for the Western District of Arkansas.

3) Escrowing and disbursing settlement proceeds

My firm's engagement is limited to the aforementioned services in connection with settlement of your principal claimants' claims against the [USDA] arising out of civil rights discrimination.

My firm's fees are based on the amount of time required to provide the services needed to complete your principal claimants' settlements; and will be charged at the rate of $150.00 per hour.

Please keep me informed as this matter progresses. In the meantime, if you have any questions, please call. Thank you for choosing my firm to represent your principal claimants in this matter.

Pls.' Opp'n to Def. William Hallack, Jr.'s Mot. to Dismiss, Ex. B–Letter of Engagement, at 1, *Deloney v. Chase*, No. 15-cv-4104 (W.D. Ark. Mar. 3, 2016), ECF No. 14-2.

While the engagement letter provides for reviewing and executing settlement documents, Hallack maintains that his only work with Chase involved holding the funds in escrow. The Deloneys do not dispute this assertion. Hallack contends that he did not know the identity of any "principal claimants" at the time the engagement letter was issued.

The Deloneys allege that in August 2011, Chase defrauded them of $110,000 from the settlement funds under the guise of an investment opportunity. The Deloneys claim that Hallack disbursed the $110,000 to Chase without performing any investigation concerning the circumstances or propriety of the disbursal.

The Deloneys sought to recover the settlement funds by filing suit against Chase and Hallack in the Circuit Court of Little River County, Arkansas. Hallack moved to dismiss, arguing that the state circuit court lacked personal jurisdiction over

him. In a hearing on the motion to dismiss, the state circuit court stated its intent to grant the motion to dismiss. Prior to issuance of an order of dismissal, the Deloneys non-suited their case. Thereafter, the Deloneys re-filed their claims in federal district court. The Deloneys' complaint alleged breach of contract, promissory estoppel, unjust enrichment, conversion, breach of fiduciary duty, and fraud claims against Chase. The Deloneys alleged legal malpractice and breach of fiduciary duty against Hallack. The Deloneys asserted that the federal court had jurisdiction to hear the action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and is between citizens of different states.

Hallack moved to dismiss, reasserting the arguments made in his motion before the state circuit court. He asserted that the Deloneys' complaint failed to state facts supporting an exercise of personal jurisdiction over him. Specifically, Hallack claimed that he has no relevant contacts with the State of Arkansas and that any legal work related to the Deloneys' funds occurred in Louisiana. Hallack averred that his personal contact with the Deloneys consisted of a few phone calls and e-mails. Further, Hallack maintained that the funds at issue were held in escrow in Louisiana and that any distribution of those funds was made by Hallack in Louisiana. Finally, Hallack stated that he performed no substantive legal work outside of Louisiana.

The Deloneys did not dispute Hallack's recitation of the facts. Instead, they argued that Hallack's agreement to hold their funds in escrow, as evidenced by the October 2010 engagement letter, amounts to a continuing relationship or obligation with Arkansas citizens that confers personal jurisdiction.

The district court granted Hallack's motion to dismiss. It concluded that the Deloneys failed to show that Hallack has sufficient contacts with the State of Arkansas to establish personal jurisdiction because Hallack's engagement letter and later contacts with the Deloneys did not rise to the level of a continuing relationship or obligation with Arkansas citizens. The court acknowledged the engagement letter's

reference to the "principal claimants," but it noted that Hallack never spoke to the Deloneys about his legal services prior to the agreement to hold the funds in escrow. The court pointed to Hallack's evidence that he did not know the identity of the "principal claimants" that Chase represented at the time Hallack sent the engagement letter. Before he sent the engagement letter, Hallack had communicated only with Chase, a Louisiana resident. And, Hallack sent the engagement letter only to Chase. The court emphasized that these facts were undisputed. The court acknowledged that Hallack later had a small amount of e-mail and phone contact with the Deloneys. But no dispute existed that Hallack completed all his work with escrow funds exclusively in Louisiana. Based on these facts, the court found that Hallack did not purposefully direct any actions toward the forum state. Accordingly, the court dismissed the claims against Hallack without prejudice for lack of personal jurisdiction.

## II. *Discussion*

On appeal, the Deloneys argue that the district court erred in granting Hallack's motion to dismiss based on lack of personal jurisdiction. They assert that Hallack created continuing obligations with them (Arkansas residents) by purposefully undertaking to represent Chase's "principal claimants." According to the Deloneys, Hallack's failure to learn their identities and location does not absolve him of responsibility for his actions.

"We review personal-jurisdiction issues de novo." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591 (8th Cir. 2011). "When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). To defeat a defendant's motion to dismiss for lack of personal jurisdiction,

> a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction

-5-

within the state. Although the evidentiary showing required at the prima facie stage is minimal, the showing must be tested, not by the pleadings alone, but by the affidavits and exhibits supporting or opposing the motion. We must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in its favor in deciding whether the plaintiff made the requisite showing.

*K-V Pharm. Co.*, 648 F.3d at 591–92 (cleaned up).

"Personal jurisdiction in a diversity case exists 'only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause.'" *Id.* at 592 (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004)). Arkansas's long-arm statute provides that "[t]he courts of this state shall have personal jurisdiction of all persons, and all causes of action or claims for relief, to the maximum extent permitted by the due process of law clause of the Fourteenth Amendment of the United States Constitution." Ark. Code Ann. § 16-4-101(B). As a result, Arkansas law provides that "the exercise of personal jurisdiction is limited only by federal constitutional law." *Yanmar Co. v. Slater*, 386 S.W.3d 439, 443 (Ark. 2012).

To comport with due process, "the defendant [must] purposefully establish 'minimum contacts' in the forum state such that asserting personal jurisdiction and maintaining the lawsuit against the defendant does not offend 'traditional conceptions of fair play and substantial justice.'" *K-V Pharm. Co.*, 648 F.3d at 592 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464, 474–77 (1985)). Due process requires that the defendant "have engaged in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Burger King Corp.*, 471 U.S. at 475). "[T]he defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The defendant's relationship with the forum state "must arise out of contacts

that the 'defendant *himself*' creates with the forum State." *Id.* (quoting *Burger King Corp.*, 471 U.S. at 745). "[C]ontacts between the plaintiff (or third parties) and the forum State" do not "satisfy the defendant-focused 'minimum contacts' inquiry." *Id.* "The defendant's contacts with the forum must thus be more than 'random, fortuitous, or attenuated,' and must permit the defendant to 'reasonably anticipate being haled into court there.'" *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 980 (8th Cir. 2015) (quoting *Burger King Corp.*, 471 U.S. at 474–75).

> We have identified five factors a court must consider

> in determining whether sufficient minimum contacts exist for personal jurisdiction: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience or inconvenience to the parties. Although the first three factors are primary factors, and the remaining two are secondary factors, we look at all of the factors and the totality of the circumstances in deciding whether personal jurisdiction exists.

*K-V Pharm. Co.*, 648 F.3d at 592–93 (cleaned up).

Prior to analyzing "the five factors set forth above, we first turn to the role of contracts in the personal-jurisdiction analysis. A contract between a plaintiff and an out-of-state defendant is not sufficient in and of itself to establish personal jurisdiction over the defendant in the plaintiff's forum state." *Id.* at 593. We apply

> a highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction. It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract

-7-

and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.

*Id.* (cleaned up).

The Supreme Court has explained that

where the defendant deliberately has engaged in significant activities within a State or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Burger King Corp.*, 471 U.S. at 475–76 (cleaned up). But "telephone calls, written communications, and even wire-transfers to and from a forum state do not create sufficient contacts to comport with due process such that a [defendant] could 'reasonably anticipate being haled into court there.'" *Eagle Tech. v. Expander Americas, Inc.*, 783 F.3d 1131, 1137 (8th Cir. 2015) (quoting *Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011)).

Applying our five-factor test and relevant case law, we conclude that the district court did not err in dismissing the claims against Hallack for lack of personal jurisdiction. First, the nature and quality of Hallack's contacts with Arkansas favor Hallack. Hallack resides in Louisiana, is licensed to practice law in Louisiana, and is not and has never been licensed to practice law in Arkansas.[2] Hallack owns no

___

[2]*See Marchant v. Peeples*, 623 S.W.2d 523, 525 (Ark. 1981) ("It would strain [Arkansas's long-arm statute] to say that [a Texas attorney] was transacting business in Arkansas. He was hired in Texas to work in Texas. He never came to Arkansas and

property in Arkansas, nor does he have a branch office located in Arkansas. Additionally, Hallack has no employees in Arkansas and has never engaged in advertising legal (or other services) in Arkansas. Hallack never traveled to Arkansas or personally conducted activities in Arkansas. He has never been qualified to do business in Arkansas or had an agent for service of process in Arkansas.[3]

Furthermore, Hallack prepared the engagement letter in Louisiana and addressed it to Chase, a Louisiana resident. The engagement letter mentioned only "principal claimants" and never referred to the Deloneys or Arkansas specifically. The letter was not addressed to the Deloneys. The funds that Hallack held in escrow were in Louisiana, not Arkansas. Hallack made distributions of those funds from Louisiana, not Arkansas. Hallack's legal services were rendered in Louisiana, not Arkansas. *See Eagle Tech.*, 783 F.3d at 1137. Any communication, via telephone or e-mail, that Hallack had with the Deloneys occurred while Hallack remained in Louisiana. *See, e.g.*, *Porter v. Berall*, 293 F.3d 1073, 1076 (8th Cir. 2002) ("Contact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause.").

Second, the quantity of Hallack's contacts with Arkansas also favors Hallack. The Deloneys do not challenge the district court's characterization that Hallack had

---

offered no services here. The negligent act complained of was failing to file a pleading in Texas.").

[3]*See Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226 (8th Cir. 1987) ("While we do not dispute Austad's claim that an attorney-client relationship existed between Austad and Pennie & Edmonds, we do not believe that Pennie & Edmonds had sufficient contacts with South Dakota to confer personal jurisdiction. Pennie & Edmonds does not maintain an office in South Dakota nor do any of its attorneys reside there or maintain a license to practice law there. Pennie & Edmonds has never advertised or solicited business in South Dakota. Further, Pennie & Edmonds did not actively seek out Austad as a client.").

only a small amount of e-mail and phone contact with the Deloneys after sending the engagement letter to Chase. As pointed out above, the engagement letter was addressed to Chase, not to the Deloneys.

Third, the relationship of the Deloneys' cause of action (legal malpractice and breach of fiduciary duty) to Hallack's contacts with Arkansas weighs in Hallack's favor. The Deloneys' legal action relates to Hallack's engagement letter with Chase. Again, this engagement letter was not addressed to them, nor was it written in Arkansas. It was addressed to a Louisiana resident (Chase) in Louisiana.

Finally, it would be highly inconvenient for Hallack to be haled into court in Arkansas given that he was never physically present in Arkansas during the events that gave rise to the present suit.

### III. *Conclusion*
Accordingly, we affirm the judgment of the district court.

_____