# United States Court of Appeals
## For the Eighth Circuit
_____

No. 19-1427
_____

Panircelvan Kaliannan; Tong Lay Yeen Giovanna; Tan Hock Seng; Roger Teo Kok Wei; Teo Khim Ho; Chang Mun Kumchristina; Koh Hwee Ben Erin; Ng Yim Har; Koh Thong Juay; Tong Siew Geok

*Plaintiffs - Appellees*

v.

Ee Hoong Liang

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of North Dakota - Fargo
_____

Submitted: April 15, 2021
Filed: June 18, 2021
_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Plaintiffs, Singapore residents and citizens who invested in a now-defunct North Dakota company called North Dakota Developments, LLC (NDD), brought this action in North Dakota federal court seeking damages from Defendant for his role in convincing Plaintiffs to buy fraudulent, unregistered securities. The district

court[1] denied Defendant's motion to dismiss for lack of personal jurisdiction and improper venue, and it later granted Plaintiffs' motion for summary judgment and awarded damages. Defendant appeals. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

NDD purported to be a real estate venture for the construction and operation of housing units for oil and gas workers in three North Dakota cities and one Montana city. In reality, NDD was a Ponzi scheme in which investors were paid their "guaranteed" returns with funds provided by later investors. NDD "investments" comprised interests in the housing units coupled with management agreements. Together, they were investment contracts[2] and therefore securities under both federal and North Dakota law.[3] However, the securities were not registered in compliance with federal or state law.

From approximately May 2012 to April 2015, Defendant Ee Hoong Liang, a Singapore citizen and resident, acted as a liaison between NDD and numerous domestic and foreign investors, including Plaintiffs. Defendant actively recruited Plaintiffs to purchase NDD investments, in exchange for which NDD paid Defendant commissions in the form of a percentage of the transactions. Defendant approached each Plaintiff and offered them the NDD "investment opportunity." He

---

[1]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

[2]They were investment contracts because the investors invested money in a common enterprise with expectations of profits to be derived from the NDD scheme. See SEC v. Edwards, 540 U.S. 389, 393 (2004).

[3]See 15 U.S.C. § 77b(a)(1) (defining "security" as including "any . . . participation in any profit-sharing agreement [or] . . . investment contract"); N.D. Cent. Code § 10-04-02(19) (defining "security" to include an "investment contract").

gave each Plaintiff brochures and pamphlets describing the NDD investment opportunity. Defendant worked with other perpetrators of the NDD scheme in North Dakota to create marketing materials specifically targeting Plaintiffs. Additionally, Defendant traveled to North Dakota in order to market and sell the investments to Plaintiffs. While in North Dakota, Defendant took pictures and videos of the NDD properties, and he sent them to Plaintiffs as "evidence" that the properties were functioning. Defendant urged Plaintiffs to invest in NDD and directed them to send their money and investment-related paperwork to North Dakota. Defendant also communicated extensively with North Dakota entities regarding the sales.

In July 2013, each Plaintiff invested in NDD and signed a management agreement wherein NDD would manage the properties and pay each Plaintiff a guaranteed return on their investment. Unbeknownst to Plaintiffs, NDD paid Defendant a commission for each investment he solicited. Also unbeknownst to Plaintiffs, the "investments" were fraudulent, unregistered securities. In May 2015, the Securities and Exchange Commission sued NDD's principals and others (not including Defendant) to try to recoup investors' money, and it shut down the NDD scheme. Ultimately, each Plaintiff lost money on their investment.

Plaintiffs filed a complaint and then an amended complaint in the district court, alleging that Defendant violated the Securities Act of 1933, 15 U.S.C. § 77a et seq. (Count 1); the North Dakota Securities Act, N.D. Cent. Code § 10-04-17 (Counts 2-4)[4]; and that Defendant was negligent under "the common law" (Count 5), see R. Doc. 8, at 23. They contended that Defendant was NDD's "agent"; that he solicited and sold unregistered, fraudulent securities; and that Plaintiffs were damaged in the form of lost investments. Defendant, acting pro se, filed a response which the court clerk deemed an "answer." Later, Defendant filed a pro se motion to dismiss for lack of personal jurisdiction and improper venue. While the motion was pending and after he participated in a telephonic scheduling conference with the

_____

[4]Count 2 alleged that Defendant offered and sold unregistered securities; Count 3 alleged that Defendant sold securities as an unlicensed agent; and Count 4 alleged that Defendant sold securities through untrue statements and omissions.

district court, Defendant sent a letter to the district court stating that his Singapore legal counsel had advised him that he had not been properly served and thus there was "[n]o case for [him] to answer." R. Doc. 29, at 1. Thereafter, Defendant stopped participating in the litigation.

The district court denied Defendant's motion to dismiss, concluding that it could exercise specific personal jurisdiction over Defendant and that venue was proper in North Dakota. Later, Plaintiffs moved for summary judgment on all claims, to which Defendant did not respond despite admittedly receiving notice.[5] The district court granted summary judgment in favor of Plaintiffs and awarded total damages of $852,638.81. Defendant, now represented by United States counsel, appeals the district court's denial of his motion to dismiss and its grant of summary judgment in favor of Plaintiffs.[6] He does not challenge the damages amount.

## II.

Defendant first argues that the district court erred in denying his motion to dismiss for lack of personal jurisdiction and improper venue. We review the district court's rulings on personal jurisdiction and venue de novo. See Wells Dairy, Inc. v. Food Movers Int'l, Inc., 607 F.3d 515, 518 (8th Cir. 2010) (personal jurisdiction); Steen v. Murray, 770 F.3d 698, 702 (8th Cir. 2014) (venue). "The plaintiffs bear the

---

[5]In a Supplemental Declaration in support of his motion for relief from judgment under Federal Rule of Civil Procedure 60(b), Defendant admitted that he had received notice of the motion for summary judgment. The Rule 60(b) motion is addressed in further detail infra at note 6.

[6]After filing his notice of appeal, Defendant, through counsel, also filed in the district court a Rule 60(b) motion for relief from judgment; thus, we stayed the appeal pending the district court's resolution of the motion. The district court denied the motion. In his opening brief on appeal, Defendant challenged the denial of the Rule 60(b) motion. However, because Defendant did not file a notice of appeal from the denial of the Rule 60(b) motion, we dismissed that portion of the appeal for lack of jurisdiction.

burden of establishing a prima facie showing of jurisdiction, and we view the [facts] in the light most favorable to the plaintiffs." Whaley v. Esebag, 946 F.3d 447, 451 (8th Cir. 2020).

## A.

"Federal courts apply the long-arm statute of the forum state to determine the existence of personal jurisdiction over the parties." Id. (citing Fed. R. Civ. P. 4(k)(1)(A)). North Dakota's long-arm statute permits personal jurisdiction to the maximum extent provided by the Due Process Clause of the Fourteenth Amendment, see Hansen v. Scott, 645 N.W.2d 223, 232 (N.D. 2002); N.D. R. Civ. P. 4(b)(2), so the traditional due process analysis is dispositive, cf. Whaley, 946 F.3d at 451 (conducting similar analysis under Arkansas's long-arm statute). "[C]ritical to due process analysis . . . is that the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (second alteration in original) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

In analyzing whether specific jurisdiction comports with due process, we must decide whether the defendant has certain minimum contacts with the forum state and whether the plaintiffs' claims "arise out of or relate to the defendant's contacts." See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1025 (2021) (citation omitted). We consider "the defendant's contacts with the forum [s]tate itself, not the defendant's contacts with persons who reside there." Walden v. Fiore, 571 U.S. 277, 285 (2014). To assess minimum contacts, we use a five-factor test, with the first three factors being of "primary importance": "(1) the nature and quality of [defendant's] contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." Whaley, 946 F.3d at 452 (citation omitted). "The fourth and fifth factors 'carry less weight and are not dispositive.'" Id. (citation omitted). Although the first three factors are

"primary," we look at all the factors and the "totality of circumstances" to determine whether personal jurisdiction exists.  K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 592-93 (8th Cir. 2011) (citation omitted).

Viewing the facts in the light most favorable to Plaintiffs, we find that the first and second factors weigh in favor of exercising jurisdiction.  Plaintiffs allege that Defendant, among other things: (1) actively recruited investors, including Plaintiffs, to invest in a North Dakota company; (2) brokered the sale of interests in North Dakota real property and of North Dakota-issued securities; (3) received commissions from North Dakota in connection with sales of NDD securities; (4) communicated extensively with various North Dakota entities in connection with the sales; and (5) traveled to North Dakota in order to market and sell the investments to Plaintiffs and other investors, and on such trips took photos and videos as "evidence" that the NDD properties were functioning.  Accepting Plaintiffs' allegations as true, Defendant's contacts with North Dakota were numerous, and furthermore "were not 'random, fortuitous, or attenuated,' but rather were central to an alleged scheme to 'purposely avail[] [himself] of the privilege of conducting activities' in [North Dakota]."  See Whaley, 946 F.3d at 452 (first and second alterations in original) (citations omitted).  Accordingly, the first and second factors weigh in favor of finding personal jurisdiction.

We also agree with the district court that the third factor weighs in favor of finding jurisdiction because Defendant's contacts with North Dakota "directly relate to" Plaintiffs' claims.  See generally Ford Motor Co., 141 S. Ct. 1017 (holding that state can exercise specific jurisdiction over defendant if defendant's contacts "relate to" plaintiff's claim).  According to the amended complaint, Defendant participated in an allegedly fraudulent scheme by soliciting Plaintiffs to purchase unregistered securities relating to North Dakota real estate.  Defendant communicated extensively with Plaintiffs regarding the North Dakota properties in order to convince Plaintiffs to invest.  Additionally, Plaintiffs allege that Defendant traveled to North Dakota to take pictures and videos of the properties, and in fact sent such pictures and videos to Plaintiffs to help convince them that their "investments" would be sound.

Defendant stresses that many of the parties' communications about Plaintiffs' "investments" took place in Singapore. Assuming this is true, the communications—and "investments" themselves—still concerned North Dakota properties. That the communications occurred elsewhere does not undermine a finding that Defendant's North Dakota contacts "relate to" Plaintiffs' claims. Accordingly, we find that the third factor weighs in favor of finding jurisdiction.

Regarding the fourth factor, the district court found that North Dakota had an interest in adjudicating a dispute over the sale of unregistered, fraudulent securities tied to real property in North Dakota, and that the claims relate to the regulation of securities in North Dakota and disposition of real property in North Dakota, rendering the dispute "local" in nature. We do not disagree with the notion that there are local elements to this dispute. However, we note that the district court's conclusion does not precisely track our articulation of the fourth factor as the "interest of the forum state in providing a forum *for its residents*." See Whaley, 946 F.3d at 452 (emphasis added) (citation omitted); see also K-V Pharm. Co., 648 F.3d at 595 (finding that "Missouri obviously has an interest in providing a forum for resident corporations like [the plaintiff]"); Wells Dairy, Inc., 607 F.3d at 520 ("Iowa, as the forum state, has an interest in providing a forum for its company."); Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd., 89 F.3d 519, 525 (8th Cir. 1996) (noting that "Minnesota has an obvious interest in providing a local forum in which its residents may litigate claims"). Here, none of the Plaintiffs are North Dakota residents, suggesting that the forum state's interest is not implicated with respect to providing a forum for its residents. Cf. Asahi Metal Indus. Co. v. Superior Ct., 480 U.S. 102, 114 (1987) ("Because the plaintiff is not a California resident, California's legitimate interests in the dispute have considerably diminished."). Accordingly, we find that the fourth factor does not weigh in favor of finding jurisdiction. However, based on the totality of the circumstances, our finding on this factor does not outweigh the first three "primary" factors. See K-V Pharm. Co., 648 F.3d at 592-93. Thus, it does not undermine the propriety of jurisdiction here.

Finally, we find that the fifth factor, convenience of the parties, does not weigh in favor of exercising jurisdiction, but it does not change the outcome here. Although the at-issue *properties* are in North Dakota, it cannot fairly be said that it is convenient for *the parties*—all Singapore residents and citizens—to litigate in North Dakota. Nonetheless, because the fifth factor carries less weight, any inconvenience to the parties does not undermine the propriety of jurisdiction here. Moreover, Defendant was willing to travel to North Dakota to advance the alleged investment scheme, so his complaint that it would be inconvenient for him to litigate in North Dakota rings hollow. Based on the weight of the first three factors and the totality of the circumstances, Defendant's "conduct and connection with [North Dakota] [were] such that he should [have] reasonably anticipate[d] being haled into court there." See Burger King, 471 U.S. at 474 (quoting World-Wide Volkswagen, 444 U.S. at 297). Accordingly, we conclude that the exercise of personal jurisdiction over Defendant was proper.[7]

## B.

Defendant next contends that the suit should have been dismissed for improper venue. Plaintiffs' claims arose "from the sale or solicitation of unregistered, fraudulent North Dakota securities related to real property located in North Dakota," R. Doc. 42, at 9, and thus the District of North Dakota is where "a

---

[7]Plaintiffs argue in the alternative that the district court can be affirmed on the basis that Defendant's motion to dismiss for lack of personal jurisdiction was untimely, and thus barred, because he filed it after he filed an answer. A motion to dismiss for lack of personal jurisdiction must be made *before* a responsive pleading (e.g., an answer) is filed. See Fed. R. Civ. P. 12(b). A leading treatise has opined that "[a] strict interpretation of the timing provision's language" means that a district court *must* deny a motion to dismiss for lack of personal jurisdiction after the defendant files an answer. See 5C Arthur R. Miller, Mary Kay Kane, & A. Benjamin Spencer, Federal Practice & Procedure Civil § 1361 (3d ed. 2021). Because the district court's decision can be affirmed on the merits, and because Defendant was pro se when he filed the document that the court clerk designated as an "answer," we decline to consider Plaintiffs' alternative argument.

substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated," see 28 U.S.C. § 1391(b)(2). Thus, we agree with the district court that venue was proper.

C.

Finally, Defendant argues, for the first time on appeal, that the suit should have been dismissed based on *forum non conveniens* because Singapore is a better forum for litigating this dispute. "The doctrine of *forum non conveniens* allows a court to decline to exercise jurisdiction and dismiss a case where that case would more appropriately be brought in a foreign jurisdiction." K-V Pharm. Co., 648 F.3d at 597. Because Defendant did not argue for dismissal on *forum non conveniens* grounds in the district court, we decline to consider it. See Peter Kiewit Sons', Inc. v. Wall St. Equity Grp., Inc., 809 F.3d 1018, 1022 (8th Cir. 2016) (appellate court ordinarily does not consider an argument raised for the first time on appeal). Accordingly, we affirm the district court's denial of Defendant's motion to dismiss.

III.

Defendant also challenges the district court's grant of summary judgment on all counts in favor of Plaintiffs. We review the district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the nonmoving party. Primerica Life Ins. Co. v. Woodall, 975 F.3d 697, 699 (8th Cir. 2020).

Defendant did not respond to Plaintiffs' motion, despite admittedly having notice. The evidence cited by the district court as supporting the grant of summary judgment was the Requests for Admission propounded upon Defendant, which the district court deemed admitted due to Defendant's failure to respond to the Requests within 30 days, see Fed. R. Civ. P. 36(a)(3). Defendant does not challenge the district court's decision to deem the Requests admitted, nor does he challenge any other aspect of the Requests. Instead, he argues that the district court should have considered his answer and motion to dismiss, in which he "disputed" Plaintiffs'

claims. He also attacks the alleged shortcomings of Plaintiffs' other summary judgment evidence.

First, because the answer and motion to dismiss were unsworn, they were not evidence that the district court could consider in ruling on the motion for summary judgment. See Fed. R. Civ. P. 56(c); Banks v. Deere, 829 F.3d 661, 668 (8th Cir. 2016) (holding that "unsworn and unattested statements" could not be considered in deciding motion for summary judgment). Accordingly, we reject Defendant's argument that the district court erred in not considering these materials.

Second, assuming Defendant is correct about the alleged shortcomings in some of Plaintiffs' evidence, the deemed-admitted Requests for Admission alone demonstrate that Plaintiffs were entitled to summary judgment. "[I]n reviewing *de novo* the grant of [Plaintiffs'] unopposed motion for summary judgment, we 'must still determine that the moving party is entitled to judgment as a matter of law on [each] claim.'" Calon v. Bank of Am., N.A., 915 F.3d 528, 530 (8th Cir. 2019) (third alteration in original) (quoting Interstate Power Co. v. Kan. City Power & Light Co., 992 F.2d 804, 807 (8th Cir. 1993)).

The Requests asked Defendant to admit liability for all five counts of the amended complaint, including the elements of each claim and underlying facts. Regarding Count 1—violation of the Securities Act of 1933, 15 U.S.C. § 77a et seq.—Defendant was asked to admit that he violated the Securities Act of 1933[8] and that he was liable to Plaintiffs for the violations. See R. Doc. 50-1, at 1-5 (Requests

---

[8]Under 15 U.S.C. § 77*l*(a)(2), a person is liable if he, in connection with the offer or sale of securities, made "an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading"; plaintiffs were unaware of the misrepresentations and omissions; defendant knew, or in the exercise of reasonable care could have known, of the misrepresentations and omissions; and the plaintiffs were damaged as a result. See Alton Box Bd. Co. v. Goldman, Sachs & Co., 560 F.2d 916, 918, 924 (8th Cir. 1977). "To recover under that section a plaintiff need not prove reliance . . . ." Id. at 924.

Nos. 1, 3-4, 6-7, 11-14, 17-20, 22-26, 31-32). Regarding Count 2—violation of the North Dakota Securities Act for offering and selling unregistered securities—Defendant was asked to admit that he acted as an offeror/seller of NDD securities and as NDD's agent, in which he offered and sold NDD securities that were unregistered and not exempt from registration in violation of N.D. Cent. Code § 10-04-04; and that he was liable to Plaintiffs for these violations. See R. Doc. 50-1, at 1-6 (Requests Nos. 1-5, 7, 11-14, 19-20, 24, 33, and 40). Regarding Count 3—violation of the North Dakota Securities Act for sales of securities by unlicensed agents—Defendant was asked to admit that he acted as a seller of NDD securities, that he acted as NDD's agent, that he was unlicensed to sell securities in violation of N.D. Cent. Code § 10-04-10, and that he was liable to Plaintiffs for these violations. See R. Doc. 50-1, at 1-6 (Requests Nos. 1-5, 7, 10-11, 14-16, 19-21, 27, 29, 30, 34, and 40). Regarding Count 4—violation of the North Dakota Securities Act for sales of securities through untrue statements and omissions—Defendant was asked to admit that he sold and aided in selling securities to Plaintiffs without disclosing material facts in violation of N.D. Cent. Code § 10-04-15(2) (including that the investments were securities, the securities were unregistered, and Defendant was receiving commissions); and that he was liable to Plaintiffs for these violations. See R. Doc. 50-1, at 1-6 (Request Nos. 1, 3-7, 11, 17-20, 22-26, 28-29, 33, 35-40). Finally, regarding Count 5—negligence under North Dakota law[9]—Defendant was asked to admit that he owed Plaintiffs a duty of care (to, among other things, make sure that the investments were issued in accordance with securities laws), that he breached the duty of care (by, among other things, failing to make sure that the investments complied with securities laws), and that his breach actually and proximately caused Plaintiffs' injuries (investment losses). See R. Doc. 50-1, at 1, 7-8 (Requests Nos. 1, 3, 41-44); see also Doan, 632 N.W.2d at 820 (stating negligence standard under North Dakota law). Because the Requests were deemed

---

[9]Although the amended complaint used the label "Negligence under the Common Law," R. Doc. 8, at 23, Plaintiffs' summary judgment motion grounded the negligence claim in North Dakota law, see R. Doc. 50, at 17-18 (citing Doan v. City of Bismarck, 632 N.W.2d 815, 820 (N.D. 2001)).

admitted, Defendant admitted to violating federal securities law, violating North Dakota securities laws, and to being negligent under North Dakota law.

Defendant urges this Court to reverse and remand so that he can defend against the motion for summary judgment on the merits. However, Defendant already had an opportunity to defend against the motion but failed to avail himself of that opportunity. Instead, he decided to stop participating in the district court litigation, including not responding to the motion for summary judgment. His "buyer's remorse" regarding that decision is not a basis for reversal. Accordingly, we conclude that the district court correctly granted summary judgment in favor of Plaintiffs.

## IV.

We affirm the district court's judgment.

_____